1  Oliver M. Gold, Bar No. 279033
   OGold@perkinscoie.com
2  PERKINS COIE LLP
   1888 Century Park East, Suite 1700
3  Los Angeles, California 90067-1721
   Telephone:    +1.310.788.9900
4  Facsimile:    +1.310.788.3399

5  Jennifer N. Huckleberry, Bar No. 342725
   JHuckleberry@perkinscoie.com
6  Perkins Coie LLP
   11452 El Camino Real, Ste 300
7  San Diego, California 92130-2080
   Telephone:  +1.858.720.5700
8  Facsimile:   +1.858.720.5799

9  Attorneys for Defendant
   Amazon.com Services LLC
10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14  LATONYUA HARDEN, TAYLOR          Case No. 2:23-cv-04098-MWF-ASx
    HARDEN, JAYVIN HARDEN,
15  FREDERICK HARDEN JR.,            **DEFENDANT AMAZON.COM**
    MARQUS GARVEY WILIAMS II, by     **SERVICES LLC'S NOTICE OF**
16  and through his GUARDIAN AD      **MOTION AND RENEWED**
    LITEM, ALYCESON WILLIAMS,        **MOTION TO DISMISS FOR**
17                                   **FORUM NON CONVENIENS;**
                  Plaintiffs,        **MEMORANDUM OF POINTS AND**
18                                   **AUTHORITIES**
             v.
19                                   Date:        May 12, 2025
    AMAZON.COM SERVICES LLC;         Time:        10:00 a.m.
20  AMAZON DELIVERY SERVICE          Courtroom:   5A
    PARTNER, a California entity, form
21  unknown; AMAZON FULFILLMENT      Compl. Filed:    April 24, 2023
    CENTER, a California entity, form
22  unknown; and DOES 1-100, inclusive,

23               Defendants.

24

25

26

27

28

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

## NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 12, 2025, at 10:00 a.m., in Courtroom 5A of the Ronald Reagan Federal Building and U.S. Courthouse, United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California 92701-4516, Defendant Amazon.com Services LLC moves the Court to dismiss Plaintiffs' First Amended Complaint for forum non conveniens.

Amazon renews its FNC motion because the Court's basis for denying the motion—Plaintiffs' representations that Frederick drowned and LaTonyua was the only witness to his drowning—have proven to be false. Informal discovery in Mexico and recent admissions by LaTonyua have revealed that Frederick did not drown, but died from a cardiac event on land, and there were many Mexican witnesses. None of these witnesses will voluntarily testify, and their testimony is only available if the case is filed in Mexico. Mexico is an available and adequate forum and the private and public interest factors strongly favor litigating this case in Mexico rather than California, where the factfinder will have access to all relevant evidence.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Veronica Esquivel-Patino, Jennifer Huckleberry, Dr. Renu Virmani, Dr. Peter Mazari, Dr. Ori Ben-Yehuda, the previously filed Declaration of Veronica Esquivel (ECF No. 23-11), and the evidence attached hereto.

///
///
///
///
///
///
///

1        Amazon conferred with Plaintiffs about this Motion on March 28, 2025

2  pursuant to L.R. 7-3. (Huckleberry Decl., Ex. AD, at 239:22-242:02). The parties

3  disagree on the Motion. (*Id.*)

4  Dated:  April 8, 2025              **PERKINS COIE LLP**

5

6                             By:  */s/ Oliver M. Gold*

7                                Oliver M. Gold

8                                Jennifer N. Huckleberry

9                             Attorneys for Defendant

10                            Amazon.com Services LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

                                                                                    **Page**

I.      INTRODUCTION ..........................................................................................7

II.     BACKGROUND ...........................................................................................9

        A.      Newly discovered evidence shows that Plaintiffs'
                representations about the event and witnesses were inaccurate. .........9

        B.      The Court denied Amazon's FNC Motion based in part on these
                misrepresentations................................................................................10

        C.      Amazon located key witnesses in Mexico whose existence
                Plaintiffs previously denied. ................................................................11

        D.      LaTonyua admits that her prior representations were false...............15

        E.      Other evidence demonstrates the Mexican witnesses'
                importance..............................................................................................16

III.    LEGAL STANDARD ..................................................................................18

IV.     ARGUMENT ...............................................................................................19

        A.      Mexico is an available and adequate forum.......................................19

        B.      Private interest factors strongly favor dismissal. ..............................20

                1.      Contrary to Plaintiffs' representations, key witnesses and
                        documents are in Mexico..........................................................20

                2.      Key documents and physical evidence are in Mexico and
                        unavailable here. ......................................................................24

                3.      The other factors also point toward dismissal. ........................24

        C.      Public interest factors strongly favor dismissal. ...............................25

        D.      The Court should give zero deference to Plaintiffs' forum
                choice. ....................................................................................................27

V.      CONCLUSION ............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) ................................................................. 21

*Gutierrez v. Advanced Med. Optics, Inc.*,
    640 F.3d 1025 (9th Cir. 2011) ................................................................. 19

*Harrison v. Campbell*,
    2023 WL 8872153 (C.D. Cal. Nov. 13, 2023) ...................................... 18

*Lony v. E.I. Du Pont de Nemours & Co.*,
    935 F.2d 604 (3d Cir. 1991) ..................................................................... 18

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009) ......................................... 19, 23, 25, 27

*Lueck v. Sundstrand Corporation*,
    236 F.3d 1137 (9th Cir. 2001) ........................................................ 22, 26

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .................................................................................. 19

*Sch. Dist. No. 1J v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ..................................................................... 18

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*,
    549 U.S. 422 (2007) .......................................................................... 18, 28

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ................................................................. 20

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

STATUTES

28 U.S.C. § 1927 ........................................................................................... 28

Cal. Civ. Proc. Code § 1713 ......................................................................... 25

Civ. Code for State of Quintana Roo Article 87 ......................................... 19

Civ. Code for State of Quintana Roo Article 115 ....................................... 19

Civ. Code for State of Quintana Roo Article 121 ....................................... 19

RULES

Fed. R. Civ. Proc. 11 ..................................................................................... 28

Fed. R. Evid. 804 .......................................................................................... 23

Fed. R. Evid. 807 .......................................................................................... 12

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Sometimes the interest in finality of pretrial rulings has to give way to the interest in getting to the truth. That is the case here with the ruling on Amazon's FNC motion. ECF No. 39. The reasons the Court gave for denying Amazon's motion are no longer viable given the subsequent dismissal of the only other defendant and the discovery—contrary to Plaintiffs' discovery responses and statements to this Court— that key witnesses and documents exist in Mexico that directly contradict their claims. In light of newly discovered information that was concealed by Plaintiffs, the Court should reassess the FNC calculus and dismiss this lawsuit so it can be litigated in Mexico, where it belongs.

This case involves the death of Frederick Harden while he was vacationing with his wife, LaTonyua, in Mexico. Plaintiffs allege that a snorkel mask purchased on Amazon "caused [Frederick] to asphyxiate and drown while being used as intended …." ECF No. 46, ¶ 26. The clear implication in their complaint and discovery responses is that Frederick died in the water. We now know this is untrue. Frederick, who had a prior heart attack and strokes and ignored his doctors' advice to have a defibrillator implanted, got out of the water shortly after he got in, complaining that he did not feel well. He was taken to the shore, where he was very much alive. He was taken by ambulance to the hospital, where he was also alive. He received treatment there but ultimately died of cardiac arrest—not drowning.

The first ground the Court cited for denying Amazon's FNC motion was availability of a foreign forum. The Court expressed no concerns about litigating in Mexico other than the co-defendant, OUSPT, had not consented to personal jurisdiction there. ECF No. 39, at 3. That entity has been dismissed, so jurisdiction over OUSPT is no longer an impediment to re-filing this lawsuit in Mexico.

The second ground the Court gave is lack of key witnesses located in Mexico. It wrote that Amazon "has failed to assert which witnesses actually saw Decedent's

**AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS**

death, and if they did not witness the Decedent's death, what their anticipated testimony would be." *Id.*, at 5. Amazon could not then make any such assertion in good faith because Plaintiffs, who were the only witnesses Amazon could compel information from in this proceeding, falsely denied the existence of witnesses and documents in Mexico. Plaintiffs stated in discovery, for example, that nobody other than LaTonyua witnessed Frederick's death. They made the same representation to this Court, resulting in this Court writing that "Latonyua is the only person who saw her husband drown." *Id.*

Plaintiffs' statements were false. We now know that many people on the boat, shore, ambulance, and hospital saw Frederick fully alive after he was in the water. LaTonyua admitted during her deposition on March 28, 2025, that (1) Frederick did not die in the ocean, (2) there were eight to ten eyewitnesses in his immediate vicinity and many others nearby, (3) Frederick was alive, toweling himself off, and speaking on the boat ride back to shore after he was pulled from the water, and (4) Frederick was alive after they reached the shore, where he was helped by several first responders and loaded into an ambulance. The witnesses whose existence Plaintiffs previously denied confirm that Frederick did not "asphyxiate and drown." A hospital record corroborates their account and states that Frederick had "cardiac arrest." These witnesses are crucial to reaching the truth here. Unfortunately, they have declined to testify absent compulsory process in Mexico.

Amazon is filing this renewed motion to dismiss because additional evidence discovered after the ruling on the first motion (and not available earlier) demonstrates that Plaintiffs' representations about what happened in Mexico and who witnessed it were inaccurate and that a fair resolution of this case requires testimony from witnesses in Mexico that is only available if the case were filed there.

///

///

///

## II.    BACKGROUND

### A.    Newly discovered evidence shows that Plaintiffs' representations about the event and witnesses were inaccurate.

Plaintiffs allege that LaTonyua purchased a defective snorkel mask from former defendant OUSPT on Amazon.com, which caused Frederick to asphyxiate and drown in Mexico. ECF No. 46 ("FAC"), ¶¶ 16, 26. The FAC asserts six causes of action: (1) negligence (wrongful death), (2) negligence (survival action), (3) negligence (failure to warn), (4) negligent products liability, (5) strict products liability, and (6) breach of implied warranty of merchantability. The key disputed issues in this case are (1) whether the snorkel mask was defective, and (2) the circumstances and cause of Frederick's death.

Shortly after this case was filed in 2023, Amazon propounded written discovery seeking information about the circumstances of Frederick's death, records of his medical care in Mexico, and identity of all witnesses. Huckleberry Decl. ¶¶ 4-11, Exs. A-H. Plaintiffs stated in their verified interrogatory answers that Frederick "was using the defective product which caused him to asphyxiate and drown" (*id.*, Exs. A, C, E, G, No. 2), "there are no medical records related to injuries" sustained in Mexico (*id.* ¶ 5, Ex. B, No. 27), and that Plaintiffs are the only persons with information about the circumstances of his death. *Id.*, Exs. A, C, E, G, No. 11.

After Plaintiffs provided their discovery responses, Amazon met and conferred with them. Over the course of a year, Plaintiffs assured Amazon that they had completed a diligent search for all information and that documentary evidence and additional witnesses of Frederick's death simply did not exist. *Id.*, ¶ 12. Plaintiffs memorialized those representations in supplemental discovery responses, stating "Plaintiffs have produced all responsive documents/information in their possession, custody, or control that are not attorney-work product or expert work product." *Id.*, ¶¶ 13-22.

///

Amazon retained a Mexican law expert to ascertain whether the evidence and witnesses Plaintiffs denied existed did, in fact, exist. *Id.*, ¶¶ 23-24. Through those efforts, Amazon confirmed that several witnesses and medical records *do* exist in Mexico. Based on this research and information, Amazon began propounding international discovery through the Hague Conventions and moved to dismiss the case for *forum non conveniens* ("FNC Motion"). ECF No. 23.

In Opposition to the FNC Motion, LaTonyua represented to the Court in a sworn declaration that she was "the only witness to the drowning in the Ocean" (ECF No. 25-1, ¶ 11) and "[t]here were no other percipient witnesses in the Ocean that witnessed the drowning." *Id.*, ¶ 12. The clear implication of her statements was that Frederick died in the water from drowning. During the hearing on Amazon's FNC Motion, Plaintiffs' counsel also represented to the Court that Frederick received no medical care in Mexico, that there were no witnesses there, and that all witnesses (comprising only LaTonyua and Frederick's doctors) are in California:

> [T]he decedent resided in California, **all his medical records are in California, all of his doctors who provided medical care are in California**. And it would be absurd to require them to go to Mexico, translate every single piece of medical record, and have translators during the entire trial, because **all the witnesses are English speaking**.

Huckleberry Decl., Ex. AK, 13:1-7 (emphasis added). As shown below, we now know that all of this was false.

### B. The Court denied Amazon's FNC Motion based in part on these misrepresentations.

The Court denied Amazon's FNC Motion on August 9, 2024. It cited LaTonyua's representation that she was the only witness and wrote that Amazon "has failed to assert which witnesses actually saw Decedent's death, and if they did not witness the Decedent's death, what their anticipated testimony would be." ECF No. 39, at 5. The Court did not think that investigation documents in Mexico were necessarily "'key' to a products liability case where everything was bought and

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

delivered in California." *Id.*, at 6. It also found that Mexico was not an available forum because OUSPT—which at that time was a defendant—had not consented to jurisdiction there. *Id.*, at 1.

### C.    Amazon located key witnesses in Mexico whose existence Plaintiffs previously denied.

Since August, evidence independently obtained in Mexico has revealed that LaTonyua's representations were false—Frederick did *not* die of drowning and there are multiple witnesses in Mexico who confirm this fact. Specifically, Amazon has located witnesses who would testify (if compelled to in Mexico) that Frederick was alive on the boat and alive when he returned to the shore and that he died in the hospital due to cardiorespiratory arrest—not drowning. Newly discovered evidence also shows that Plaintiffs' and their counsel's representations to the Court and in discovery responses that Frederick did not receive medical care in Mexico were false.

In October 2024, Plaintiffs produced an autopsy report that Amazon had requested for over a year after Plaintiffs represented they were not in "possession, control, or custody of 'autopsy report' as none exist." Huckleberry Decl., Ex. S, No. 53, Exs. T-V, No. 37. The report confirms there *were* other witnesses and other documentary evidence regarding Frederick's death. For example, it states that Frederick was treated at Amerimed Hospital before he died. *Id.*, Ex. W. A few months later, Plaintiffs produced records from Hospital Amerimed in Cancun, which confirm that Frederick received medical care from "local lifeguards," "prehospital ambulance" first responders, and doctors at that hospital and that he died there from cardiorespiratory arrest:

///

///

///

///

///

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

> Name: Harden Frederick Bernard Sr.
> Date of Birth: 11/25/1971
> Record Number: 67195
>
> Date and Time of Admission: June 2, 2021, at 2:23 PM.
> Admission Diagnosis: Cardiac Arrest
>
> Date and Time of Discharge: June 2, 2021, at 2:33 PM.
> Reason for Discharge: Death.
> Discharge Diagnosis: Cardiorespiratory Arrest

*Id.* ¶ 30, Ex. X.

In parallel with efforts to obtain evidence under the Hague Conventions, Amazon attempted to locate and contact individuals whose identities it could ascertain from the limited records available to it. *Id.*, ¶ 24. Through these efforts, which included the use of international investigators, Amazon obtained contact information and interviewed representatives of Jungle Tour Adventures, the company that operated the snorkeling tour the Hardens were on. *Id.*; Esquivel Decl., ¶¶ 3-7. Amazon's investigator interviewed Jair Islas, a Jungle Tour employee who was working that day and personally attended to Frederick, and his manager, Haslel Maria Del Carmen Aguirre Garzon, who also witnessed Frederick's episode. Amazon learned from these witnesses—whose contact information it did not have when it filed its FNC motion—that Frederick did not drown or die in the ocean. Esquivel Decl. ¶¶ 3-7, Huckleberry Decl., Exs. AL & AM.[1]

---

[1] While both Jair and Carmen have refused to sign a declaration or voluntarily testify in California, their draft declarations, prepared based on their interviews, accurately reflect what they told the interviewer and what they would testify to if compelled to testify in Mexico. Their contact information was disclosed on March 21, 2025 and their witness statements were provided on March 28, 2025. Huckleberry Decl. ¶ 31. Sufficient guarantees of trustworthiness support the statements; they describe reuniting with LaTonyua at the hospital after the ambulance delivered Frederick, and that the Hardens were celebrating their wedding anniversary in Mexico—details which LaTonyua confirmed were correct and which Amazon would not otherwise know. And the declarations are more probative on the points for which they are offered than any other evidence that Amazon can obtain through reasonable efforts. *See* Fed. R. Evid. 807.

Jair recalls Frederick, LaTonyua, and the incident in detail. Huckleberry Decl., Ex. AM. He was a guide for another Jungle Tour group and was snorkeling near the Hardens. *Id.* Frederick arrived at the snorkeling area and did not move more than three meters in the water before he started holding his chest and complaining of pain and difficulty breathing. *Id.* Jair recalls there were other people snorkeling around the Hardens who would have witnessed Frederick holding his chest and complaining of pain. *Id.*[2]

Once Frederick began complaining, Jair pulled him into his boat and drove him to shore. *Id.* Frederick smelled of alcohol when Jair pulled him aboard, and bloody liquid was coming out of Frederick's nose. *Id.* Jair ended up covered in Frederick's blood while assisting him. *Id.*

Jair's account implicates additional witnesses to these events, including the snorkel tour participants and first responders from the nearby Club Med resort. Frederick was still conscious when he reached the shore. *Id.* According to Jair, LaTonyua was with them, and he remembers her crying, hitting, and pleading with Jair in a state of panic while he helped Frederick. *Id.* After he delivered Frederick to shore, Jair had to answer questions from responders who arrived with the ambulance. *Id.*

Jair's account confirms that Frederick was alive and communicative when the ambulance drove him to Amerimed Hospital. Jair told the interviewer—and would be expected to testify if compelled to do so in Mexico—that Frederick "clearly did not drown"; in fact, he was wearing a life vest. *Id.*

Carmen checked the Hardens into the tour and confirmed that Frederick accepted the risk of snorkeling by signing Jungle Tours' required release. *Id.*, Ex. AL. Although she was not on the boat, she was communicating in real time with Jair as he drove Frederick to shore. *Id.* She recalls Jair calling to tell her that he had just

---

[2] As explained below in Section IV.B.1, because no order from a Mexican court has compelled Jungle Tour to disclose the identities of these additional witnesses, Amazon has not yet been able to ascertain their identities.

1  pulled Frederick from the water onto a boat because Frederick had told him "I'm

2  dizzy, I can't breathe very well, I'm tired, I feel suffocated." *Id.* Jair unfastened the

3  top part of Frederick's life jacket and Frederick vomited on the boat. While she

4  provided her detailed account of the incident to Amazon's investigator, Carmen

5  refuses to voluntarily testify in this action. Esquivel Decl., ¶¶ 3-5.

6  Several first responders identified in Jair's and Carmen's declarations are also

7  witnesses. They saw Frederick in a state of distress but alive and rendered care on

8  the beach and en route to the hospital. Huckleberry Decl., Exs. AL & AM. Amazon

9  has been unable to obtain any records from the ambulance company or any testimony

10  from its employees, but according to Carmen and LaTonyua, LaTonyua rode in the

11  ambulance with Frederick. *Id.*, Exs. AM, AD, 196:6-11. There are also witnesses at

12  the hospital whose testimony would make plain that Frederick did not drown and did

13  not die in the water and that Plaintiffs' denials of medical care or associated records

14  were false. Doctors at Amerimed Hospital diagnosed Frederick as having suffered

15  "cardiac arrest" and later declared him dead from "cardiorespiratory arrest." *Id.*, Ex.

16  X. Amazon has been unable to obtain these treating physicians' identities, the full set

17  of responsive medical records from Amerimed, or a declaration or testimony from

18  Raul Hernandez, the director of Amerimed Hospital who signed the two-page report

19  diagnosing Frederick's death as cardiorespiratory arrest, without an order from a

20  Mexican court compelling him to do so. Esquivel Decl. ¶¶ 8-10.[3]

21  Despite Plaintiffs' declaration that LaTonyua "was the only witness to the

22  drowning in the Ocean" and "there were no other percipient witnesses," there *were*

23  witnesses. They can answer the question of what happened that day. But they will

24  only do so in Mexico. *Id.* ¶¶ 4, 5, 7, 9.

25

26  [3] Mr. Hernandez informed Amazon's investigator that he signed the Amerimed
Hospital report as the medical director, but that he was not the treating physician. *Id.*
27  ¶ 9; Mr. Hernandez also conveyed that there were other medical records regarding
the treatment and death of Frederick, but he could not provide the full set of
28  responsive medical records or sign a declaration, without an order from a Mexican
court compelling him to do so. *Id.*

### D.  LaTonyua admits that her prior representations were false.

Amazon deposed LaTonyua on March 28, 2025. She finally admitted that (1) Frederick did not die in the ocean (Huckleberry Decl., Ex. AD, 200:8-20), (2) there were at least eight to ten eyewitnesses in his immediate vicinity when he was pulled from the water and many others afterward, (*id.*, at 168:3-169:23; 177:18-179:22; 183:11-185:7) (3) Frederick was alive, toweling himself off, and speaking on the boat ride back to shore, (*id.*, at 186:11-189:22) and (4) Frederick was helped by several first responders and loaded into an ambulance still alive. *Id.*, at 190:13-196:11.

She also testified that Frederick suffered a heart attack in 2015 and strokes in 2017 and 2018 (*id.*, at 208:13-213:24), applied for permanent disability based on his heart condition just weeks before he died (*id.*, at 46:25-49:4), and that he refused his doctors' repeated advice that he needed a defibrillator implanted to avoid sudden cardiac death. *Id.*, at 211:14-212:22. She confirmed that both she and Frederick used the OUSPT snorkel masks before, and that Frederick "didn't mention any problems with his and I didn't have any problems with mine." *Id.*, at 87:9-88:7; 116:4-25; 137:17-138:17; 144:15-148:11.

Amazon confronted LaTonyua at her deposition with the May 20, 2024 declaration she submitted in opposition to Amazon's FNC motion. ECF No. 24-1. That declaration states, "I am the only witness to the drowning in the Ocean" and "There were no other percipient witnesses in the Ocean that witnessed the drowning." *Id.*, ¶¶ 11-12. LaTonyua admitted that she knew there were other witnesses in Mexico when she signed the Declaration. *Id.*, 202:18-204:18. An hour after LaTonyua's deposition, Plaintiffs served responses to Amazon's requests for admission, admitting that Frederick "did not die in the water while snorkeling." Huckleberry Decl., Exs. Y-AC, No. 7.

///

///

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

**E.    Other evidence demonstrates the Mexican witnesses' importance.**

Frederick had a long history of cardiac problems. He suffered two strokes in 2017 and 2018 and a heart attack in 2015. *Id.*, Ex. AE, 79:02-07, 86:05-14. Starting in 2016, four different cardiologists warned Frederick that he was at a high risk of sudden cardiac death (50% within 5 years) and urged him to have a defibrillator implanted. *Id.*, Ex. AF, 34:18-37:24, 72:08-18, 87:08-10; AE, 67:18-68:05, 69:03-13, 70:09-24, 82:14-23, 115:22-121:18, 124:19-125:07. Frederick ignored this advice and the grim statistics on which it was based—with tragic consequences. *Id.*, Ex. AF, 147:21-148:10. Frederick's blasé attitude toward his own mortality stood out to his physicians. *Id.*, Ex. AE, 18:02-19:19; AF, 50:4-12.

Frederick's condition degraded to the point that he applied for permanent disability based on his heart condition in May 2021. *Id.*, Ex. AD, 46:25-47:05. When he went snorkeling on June 2, 2021, he signed a release with Jungle Tour acknowledging that his heart conditions limited his ability to snorkel. Huckleberry Decl., Ex. AL.

The coroner who performed Frederick's autopsy in Mexico, Dr. Oscar Javier Roman Sierra, testified in December 2024 that the autopsy was incomplete. Although he stated in his report that Frederick died from drowning, he began his deposition by immediately offering caveats and excuses about weaknesses in his report. He claimed there was a large uptick in cases in 2021 which caused him to make more mistakes (Huckleberry Decl., Ex. AG, at 20-21); he acknowledged that he made mistakes in Frederick's autopsy report (*id.*, at 21); and he explained that autopsies are "a pretty rushed process" in Quintana Roo. *Id.*, at 83. Dr. Sierra conceded that all autopsies in Quintana Roo and the resulting reports are "unreliable." *Id.* at 132. The Declarations of Dr. Renu Virmani, Dr. Ori Ben-Yehuda, and Dr. Peter Mazari detail the ways in which Dr. Sierra's autopsy and report fall short. Virmani Decl., Ben-Yehuda Decl., Mazari Decl.

///

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

Dr. Sierra explained in his deposition why this autopsy and report in particular were incomplete and inconclusive. He didn't receive and was never made aware of Frederick's medical history (Huckleberry Decl., Ex. AG, at 78, 110); he had no idea that Frederick had a prior heart attack and blockage of 80-90% in the right coronary artery (*id.* at 99-100); and he did not speak with any witnesses or receive information about the circumstances of Frederick's death, even though he agreed such background "should be part of the medical examiner's role." *Id.*, at 79; Mazari Decl., ¶¶ 12-13 (witness interviews and medical history is essential to an autopsy); Virmani Decl., ¶ 12 (same); Ben-Yehuda Decl., ¶¶ 27-28 (witness testimony and medical history are imperative because traditional drowning by aspiration and Rapid Onset Pulmonary Edema is impossible to distinguish on autopsy). He testified that he declared "drowning" the cause of death, but didn't know whether Frederick died in the water (*id.*, at 86) or in the hospital from a cardiac event (*id.*, at 107-08). He described classic signs of drowning that would be expected in a drowning death but were missing in this case. *Id.*; Mazari Decl., ¶¶ 31-33 (the autopsy does not support a diagnosis of drowning); Virmani Decl., ¶¶ 11-17 (same). Despite concluding that Frederick drowned due to water in his lungs, he conceded that he never examined his lungs and didn't know whether any water was in them. *Id.* at 94, 113.

Dr. Sierra conceded that Frederick's symptoms were consistent with death resulting from a cardiac event. *Id.*, at 52, 97-98; Mazari Decl., ¶¶ 34-41 (the autopsy supports a diagnosis of heart failure); Virmani Decl. ¶¶ 18-22 (same). And he testified that Frederick may have died from pulmonary edema (fluid build-up in the lungs caused by heart failure). *Id.*, at 52; Ben-Yehuda Decl., ¶¶ 25-26 (Frederick likely died from pulmonary edema caused by heart failure). He also testified that Frederick had a "huge" heart and "thick wall," which indicates "some sort of cardiac episode, such as a heart attack." *Id.* at 97-98. The declarations of Amazon's forensic pathology expert, cardiac pathology expert, and cardiology expert further detail how the autopsy

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

1    is incomplete, inaccurate, and does not support a diagnosis of drowning. *See* Mazari,

2    Virmani, and Ben-Yehuda Decls.

## III.   LEGAL STANDARD

4         "The doctrine of *forum non conveniens* allows a court to dismiss a case

5    properly before it when litigation would be more convenient in a foreign forum."

6    ECF No. 39, at 2 citing *Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1210 (9th

7    Cir. 2017). As the Supreme Court has explained:

> A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems. . . . Dismissal for *forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and practical difficulties that can attend the adjudication of a dispute in a certain locality.

14   *Id.*, at 2 citing *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549

15   U.S. 422, 429 (2007) (cleaned up).

16        A party may renew a motion to dismiss under *forum non conveniens. See Lony*

17   *v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 616 (3d Cir. 1991) (stating the

18   defendant "had a right to move for *forum non conveniens* dismissal, and nothing

19   precluded a renewal of its motion to dismiss on that ground.") Generally, it is

20   appropriate for a district court to revisit a prior order if it is presented with *inter alia*

21   newly discovered evidence. *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th

22   Cir. 1993). "A denial without prejudice is different than a denial with prejudice in

23   the sense that the former does not preclude a subsequent motion based on the same

24   argument." *Harrison v. Campbell*, 2023 WL 8872153, at *1 (C.D. Cal. Nov. 13,

25   2023).

26   ///

27   ///

28   ///

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

1    **IV.    ARGUMENT**

2         **A.    Mexico is an available and adequate forum.**

3         "The Supreme Court and Ninth Circuit have been explicit that the existence of

4    an adequate alternative forum is the first question that must be answered in the *forum*

5    *non conveniens* inquiry. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22

6    (1981). "An alternative forum is adequate if the intended forum is capable of

7    provid[ing] the plaintiff with a sufficient remedy for his wrong." *Gutierrez v.*

8    *Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011).

9         Mexico is an available and adequate forum. Plaintiffs may bring their claims

10   in Cancun, where the death occurred. Articles 87, 115, and 121 of the Civil Code for

11   the State of Quintana Roo ("CCQR") recognize wrongful death product liability

12   claims and survival actions such as those asserted in this action. ECF No. 23-11, ¶ 9.

13   Articles 150 and 153-154 of the CCQR provide that such claims may be properly

14   heard in Cancun. *Id.*, at ¶ 7. The Ninth Circuit has recognized that Mexico is an

15   adequate and available forum in wrongful death and product liability actions like this

16   one. *See, e.g., Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656 (9th

17   Cir. 2009) (affirming dismissal of action on *forum non conveniens* grounds in favor

18   of Mexico and finding Mexico an adequate and available forum); *Gutierrez*, 640 F.3d

19   1025 (9th Cir. 2011) (same).

20        Amazon consents to the jurisdiction of Mexican courts to hear this case and

21   agrees to accept service of a lawsuit properly filed in Mexico. Amazon also agrees to

22   waive any statute of limitations defenses if this motion is granted and the action is

23   re-filed in Mexico. An alternative forum is available where, as here, the defendants

24   "are amenable to service of process in the foreign forum" and "when the entire case

25   and all parties can come within the jurisdiction of that forum." *Id.*, at 1029.

26        This Court did not express any concerns with Mexico as an available forum in

27   its prior ruling other than co-defendant OUSPT may not be subject to personal

28   jurisdiction there. It noted that "[a]ll Defendants must be subject to personal

-19-

jurisdiction in Mexican courts in order for Mexico to be considered an adequate forum," and questioned whether "Defendant OUSPT is amenable to service of process in Mexico." ECF No. 29 at 3. Plaintiff failed to serve OUSPT by the Court's September 9, 2024, resulting in that defendant's dismissal, which leaves Amazon as the sole entity whose consent to jurisdiction is necessary.

## B. Private interest factors strongly favor dismissal.

"Once the adequacy of the proposed alternative forum is established, courts consider and balance various 'private interest' and 'public interest' factors. In applying the various factors, 'the district court should look to any or all ... which are relevant to the case before it, giving appropriate weight to each.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006). The "private interest" factors are: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Cooper*, 860 F.3d at 1211 (internal citation omitted).

### 1. Contrary to Plaintiffs' representations, key witnesses and documents are in Mexico.

The Court previously recognized that the "best argument for dismissal" here is "that 'key evidence and witnesses are ... entirely unavailable outside of Mexico.'" ECF 39, at 5. The Court acknowledged Amazon's argument that "all percipient witnesses, besides Plaintiffs, such as the Mexican snorkeling tour operator and its employees are located in Mexico," but ruled on the record before it then that Amazon had not met its burden of demonstrating that these witnesses were "key" ... because Amazon could not at that point "assert which witnesses actually saw Frederick's death, and if they did not witness Frederick's death, what their anticipated testimony would be." *Id.* That is no longer the case.

Evidence uncovered since then confirms that, contrary to LaTonyua's sworn declaration, there were numerous essential witnesses to Frederick's death, all of whom are unavailable. LaTonyua admitted that on March 28, 2025. Huckleberry Decl., Ex. AD, at 204:12-205:23 (Q: "Well, you knew, for example, that there were other people in the water with you when you were snorkeling; right?·A.·Correct. Q.·And you knew that as of May 20, 2024;·right? A.·Correct."; "Q.·Other snorkel tour participants saw what happened.·A.·Again, I don't know their names. Q.·That's not my question.· It's just a yes or no. They saw what happened; right? A.·Yeah. They saw what happened·…. Q.·Okay. The first responders we talked about·were witnesses to the incident; right? A.·The first responders picked him up …. Q.·The ambulance staff, the doctors at Amerimed, all witnesses; right? A.·… They were— they administered medical aid to him. So I would—yeah, they weren't in the water. Q.·Well, the snorkel tour operator was; right? A.·He took him out of the water.")

Jair's and Carmen's accounts, which LaTonyua's recent testimony confirms, indicate there were upward of ten other tourists snorkeling alongside Frederick. *Id.*, Exs. AL, AM. And while the Ninth Circuit has "cautioned that the focus for this private interest analysis should not rest on the number of witnesses in each locale but rather … the materiality and importance of the anticipated witnesses' testimony," these witnesses' testimony is the most material testimony in the case. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1231 (9th Cir. 2011).

This entire case turns on the Mexican witnesses' testimony regarding the circumstances and cause of Frederick's death. The single most important issue in the case is whether Frederick died in the water from drowning, as Plaintiffs initially claimed, or whether he died of some other cause on land, as numerous witnesses in Mexico confirm. Plaintiffs asserted six product liability claims against Amazon, each of which requires that Plaintiffs prove that a defect in the snorkel mask was a substantial factor in causing Frederick to drown. Indeed, Plaintiffs' FAC specifically alleges that Amazon is liable for Frederick's death *because* the "SUBJECT MASK

caused [FREDERICK] to asphyxiate and drown …." ECF No. 46, ¶¶ 26, 33, 53, 58, 64, 69, 70. Therefore, to prevail on any of their claims, Plaintiffs must prove that the mask caused him to drown. Any other cause or location of death fatally undermines Plaintiffs' claims.

All of the information on this issue is located in Mexico. The U.S.-based witnesses are the Plaintiffs, and the information they have offered to date is demonstrably false. *See Lueck v. Sundstrand Corporation*, 236 F.3d 1137, 1146-47 (9th Cir. 2001) ("The documents and witnesses in the United States are all under the control of Plaintiffs and Defendants, so they can be brought to court, no matter the forum. The documents and witnesses in New Zealand, however, are not so easily summoned to the United States."). Because "the district court cannot compel production of much of the [foreign] evidence, whereas the parties control, and therefore can bring, all the United States evidence to [Mexico], the private interest factors weigh in favor of dismissal." *Id.*

The court questioned in its FNC order "why [Frederick's] doctor and medical reports, the coroner's report, and death certificate do not mitigate the need" for further testimony and concluded that Amazon had "in essence, provided names of potential witnesses that might reside in Mexico without demonstrating their materiality." ECF 39, at 5. Evidence discovered after the order answers this question. The coroner's deposition establishes that the contents of the autopsy report and death certificate are unreliable and inconclusive. Testimony from the Mexican percipient witnesses—whose existence Plaintiffs denied until recently—regarding what they observed is necessary to determine the true circumstances around Frederick's death. The Amerimed Records also undercut the untrustworthy findings in Dr. Sierra's report, as they show Frederick being admitted after suffering a "cardiac arrest." Testimony from the treating physicians at Amerimed and the ambulance employees who transported him there is the best evidence of the medical care Frederick received

1    after arriving onshore alive—facts that the Plaintiffs also denied until recently.
2    Huckleberry Decl. ¶ 5, Ex. B, No. 27.[4]

3         The percipient witnesses in Mexico are the only people who will give the
4    factfinder accurate information about what happened that day and are all unavailable
5    to testify here—either in deposition or at trial. Esquivel Decl. ¶¶ 4, 5, 7, 9. Jair,
6    Carmen, the Amerimed physicians, and Uriel Hernandez refuse to voluntarily sit for
7    their deposition or testify in the United States. *Id.*. Amazon has been precluded from
8    discovering the identities and contact information of the remaining witnesses,
9    including the tourists who snorkeled with Frederick, because Jungle Tour will not
10   disclose their identities without a Mexican court order. *Id.* Meanwhile, the Hague
11   discovery requests propounded to Jungle Tour seeking identification of these
12   witnesses are still being processed by the Mexican Central Authority and fact
13   discovery is set to close June 10, 2025. ECF No. 43; Huckleberry Decl. ¶ 37.

14        The witnesses in Mexico are unavailable for trial or other proceedings here.
15   *See* Fed. R. Evid. 804. Under the Hague Evidence Convention, parties cannot
16   examine Mexican witnesses who refuse to testify. Esquivel Decl. ¶ 10. Mexican
17   witnesses may only be compelled to testify if a lawsuit is filed in Mexico.[5] *Id.*; *See*
18   *Loya*, 583 F.3d at 664-65 (affirming dismissal of wrongful death action involving a
19   scuba diving tour in Mexico because "[decedent's] death and the activities leading
20   up to the accident occurred in Mexico," and "potential liability witnesses and relevant
21   documentation are located in Mexico.").

22   ///

23   ///

24

25   [4] Amazon has requested Ambulance records in discovery, but as of the date of this motion, has not received any. *Id.*, Ex. AD, 96:17-25.

26   [5] Mexico is a party to the Hague Evidence Convention, but objected to the methods
27   of obtaining evidence in article 18 of the Convention, which allows for compulsory
     depositions          of           Mexican          witnesses.
     https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-
28   Information/Mexico.html;      https://www.hcch.net/en/instruments/conventions/full-
     text/?cid=82 .

1

### 2.    Key documents and physical evidence are in Mexico and unavailable here.

2

3      Material documents outside the reach of Amazon are exclusively available

4   through filing a Mexican lawsuit. For example, Amerimed's director has informed

5   Amazon's investigator that he signed and provided only a truncated version of the

6   medical records maintained by the hospital that pertain to the treatment and death of

7   Frederick. Esquivel Decl., ¶¶ 9-10. Additionally, Carmen conveyed that Jungle Tour

8   will not disclose the identities or contact information of the tourists who snorkeled

9   with Frederick because it requires a Mexican court order to do so. *Id.* ¶ 4. Therefore,

10  this exculpatory evidence is only discoverable in Mexico.

11      While the Court previously found that Amazon "failed to meet its burden that

12  such documents are 'key' to a products liability case where everything was bought

13  and delivered in California," circumstances have changed. ECF No. 39, at 6.

14  LaTonyua testified that both she and Frederick used the face masks at issue on

15  multiple prior occasions and that Frederick "didn't mention any problems with his

16  and I didn't have any problems with mine." Huckleberry Decl., Ex. AD, 116:4-25;

17  137:17-138:17. The Hardens even used the masks without incident the day before

18  Frederick's death. *Id.*, 144:15-148:11.

19      LaTonyua's recent testimony reveals that the masks performed as expected on

20  at least two prior occasions and in light of her admissions (and the unavailable

21  witnesses' accounts) that Frederick did not drown, the exclusively available Mexican

22  evidence is key to determining the ultimate issue in this case. This entire case turns

23  on the Mexican witnesses' testimony and corroborating documents regarding the

24  circumstances and cause of Frederick's death—their materiality cannot be overstated

25  in this context.

26

### 3.    The other factors also point toward dismissal.

27      All remaining private interest factors also weigh in favor of dismissing this

28  case. The first five factors address location and availability of evidence and strongly

favor proceeding in Mexico. While the Plaintiffs are California residents, the key evidence and witnesses are all in Mexico and outside of U.S. jurisdiction and subpoena powers. Amazon has no recourse to compel this evidence other than to hope to receive voluntary testimony and document productions under the Hague Conventions; but the processes under these Conventions are time-consuming, cumbersome, and offer no certainty. By contrast, if this case were tried in Mexico, the court could compel attendance of witnesses and production of documents. ECF No. 23-11, ¶¶ 14-15. Even if Amazon were able to ultimately obtain this evidence in this proceeding (which it has not been able to despite diligent efforts), there will likely be significant additional delays and expense because all of the documentary evidence will need to be translated into English. Finally, Mexican judgments are enforceable in California. *See* Cal. Civ. Proc. Code § 1713, *et seq.*; *Loya*, 583 F.3d at 664-65 (affirming dismissal of wrongful death action involving Mexican scuba diving tour because "[decedent's] death and the activities leading up to the accident occurred in Mexico," and "potential liability witnesses and relevant documentation are located in Mexico.").

On the present record, the private interest factors weigh conclusively in favor of dismissal.

### C.    Public interest factors strongly favor dismissal.

The relevant public interest factors also weigh in favor of dismissal. These factors include "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on the local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Cooper*, 860 F.3d at 1211 (cleaned up).

The Court previously determined that the local interest factor was neutral. ECF No. 39 at 7. It focused on factors 2 and 5, reasoning that California law would apply if the case proceeded here and that "the costs of resolving a dispute unrelated to a particular forum would be higher in Mexico" because "most of the claims involve

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

only California or the United States." *Id.* But the "choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act." *Leuck*, 236 F.3d at 1148. "The purpose of a choice of law inquiry in a *forum non conveniens* analysis is to determine if one of these statutes would apply"; where, as here, "no such law is implicated, the choice of law determination is given much less deference on a forum non conveniens inquiry." *Id.*

The evidence unearthed in Mexico over the past months show that the locus of the claims is actually Mexico, not the U.S. Causation is the essential element common to all of Plaintiffs' claims. What happened? Who saw it? What was his condition when he emerged from the water? What treatment did he receive for that condition? The answers to all of these questions are available—but only in Mexico. Much as Plaintiffs would like this information to never see the light of day, it is essential to getting to the truth. And the costs of obtaining it are much lower in Mexico.

All material U.S. witnesses have been deposed. The information and witnesses in the U.S. are fully available to the parties wherever this case is litigated. But the Mexico portion is costly. The parties have to secure physical and documentary evidence under the Hague Conventions, translate the majority of evidence from Spanish into English, and inform the Court and a jury on the application of Mexican law. *See Leuck*, 236 F.3d at 1146-47 ("The documents and witnesses in the United States are all under the control of Plaintiffs and Defendants, so they can be brought to court, no matter the forum. The documents and witnesses in New Zealand, however, are not so easily summoned to the United States.").

U.S. discovery has been exhausted, and the clear need for foreign testimony has crystallized, both the public and private interest factors warrant dismissal.

///

///

///

AMAZON'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS

**D.    The Court should give zero deference to Plaintiffs' forum choice.**

The "deference to a plaintiff's choice of home forum because it is reasonable and convenient" is "far from absolute." *Loya*, 583 F.3d at 665 (cleaned up). Here, Plaintiffs defeated Amazon's FNC Motion in part based on LaTonyua's declaration that she was "the only witness to the drowning in the Ocean" and "[t]here were no other percipient witnesses ...." ECF No. 25-1, ¶¶ 11, 12. Plaintiffs' counsel also represented that Frederick did not receive any medical care in Mexico, there were no Mexican witnesses, and all witnesses were in California. Huckleberry Decl., Ex. AK, 13:1-7. LaTonyua finally admitted on March 28 that was all false.

The remaining Plaintiffs also provided false, sworn discovery responses committing to their narrative that Frederick drowned in the ocean. *Id.*, Exs. A, C, E, G, No. 2. Each of them subsequently testified in deposition that they lack personal knowledge about Frederick's death. *Id.*, Ex. AH, 209:24-210:07, 219:01-220:03; AI, 226:01-08, 274:17-275:13; AJ, 182:19-21. Worse, Plaintiffs Jayvin, Taylor, and Frederick Harden Jr. testified they were unable to answer questions about their sworn interrogatory responses that Frederick had drowned and that LaTonyua was the only witness, because those responses were based solely on their *attorneys'* knowledge—not their own. *Id.*, Ex. AH, 215:18-217:06; AI, 277:11-278:01; AJ, 171:13-172:18.[6]

Plaintiffs have made repeated false, sworn representations about the circumstances of Frederick's death, and then refused to disclose the basis for these false representations under the assertion of privilege, which underscores the necessity of obtaining testimony from the Mexican witnesses who can honestly testify to the incident without bias or interest in the proceeding. After intensive, international investigative work, Amazon has carried its burden of establishing that Mexico is an

---

[6] On the record, Plaintiffs' counsel confirmed that Plaintiffs' interrogatory responses were based on his (the attorney's) knowledge, not Plaintiffs', and argued that information about these responses is shielded by the attorney-client privilege and attorney work product doctrine. *Id.*, Ex. AH; AI, 209:24-211:02; AJ, AJ, 171:13-172:18.

1  available forum, and the private and public interest factors weigh decisively in its

2  favor.[7]

## V.    CONCLUSION

4    A district court "may dispose of an action by a *forum non conveniens* dismissal

5  … when considerations of convenience, fairness, and judicial economy so warrant.

6  *Sinochem Int'l Co.*, 549 U.S. at 432. The facts here present the textbook occasion to

7  revisit a ruling on an FNC motion. The Plaintiffs provided false information about

8  the existence and importance of evidence located abroad. Evidence discovered after

9  that ruling—which remained undiscovered due to false information from Plaintiffs—

10  demonstrates the importance of litigating this case in Mexico, where the factfinder

11  will have access to all relevant evidence.

12  Dated:  April 8, 2025                    **PERKINS COIE LLP**

14                                  By:  */s/ Oliver M. Gold*
15                                      Oliver M. Gold
                                       Jennifer N. Huckleberry
16
17                                  Attorneys for Defendant
                                   Amazon.com Services LLC

---

[7] Amazon intends to file a separate motion under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned, counsel of record for Amazon certifies that this brief contains 6,987 words, which complies with the word limit of L.R. 11-6.1.


Dated:  April 8, 2025                    **PERKINS COIE LLP**


                                          By: */s/ Oliver M. Gold*
                                              Oliver M. Gold
                                              Jennifer N. Huckleberry


                                          Attorneys for Defendant
                                          Amazon.com Services LLC